Opinion for the court filed by Circuit Judge LOURIE. Dissenting opinion filed by Senior Circuit Judge FRIEDMAN.
LOURIE, Circuit Judge.
Frank T. Shum appeals from the decision of the United States District Court for the Northern District of California dismissing his claims for correction of inven-torship pursuant to 35 U.S.C. § 256 and various state law claims, including fraud, fraudulent concealment, breach of fiduciary duty, and unjust enrichment. Because we conclude that the district court erred in conducting a bench trial on the inventor-ship claim prior to a jury trial on the state law claims when there were common underlying factual issues, and erred in dismissing the unjust enrichment claim on the pleadings, we vacate, reverse, and remand.
BACKGROUND
Shum is an optical engineer who worked for many years in the field of optoelectric packaging technology.[1] Shum met Jean-Marc Verdiell, who is also an engineer experienced in the field of optoelectronics, while working at Spectra Diode Laboratories, Inc. (“SDL”). In 1996, Shum left SDL to form a company called Radiance Design (“Radiance”), which focused on the development of optoelectronic packaging. Although Verdiell was still employed with SDL, Shum continued to work with him on preparing grant proposals for various optoelectronic packaging projects. In March 1997, Verdiell resigned from SDL and joined Shum at Radiance. On April 22, 1997, Shum and Verdiell incorporated Radiance as equal shareholders. Verdiell was named President and Treasurer, and Shum, Vice President.
On the day of incorporation, Shum filed patent application 08/838,022 (the “'022 patent application”), entitled “Optoelectronic Assembly and Method of Making the Same,” on behalf of Radiance. Shum was named the sole inventor. During the following months, Shum and Verdiell’s relationship deteriorated. On January 5, 1998, Radiance was dissolved pursuant to a Plan of Liquidation, which granted Shum and Verdiell “equal rights to independently exploit intellectual property developed by the corporation.” The following day, Verdiell filed a patent application on behalf of a company he had formed several months earlier called LightLogie, Inc. That patent application matured into U.S. Patent 5,977,567 (the “'567 patent”) on November 2, 1999. After the issuance of the '567 patent, LightLogie obtained additional patents relating to similar subject matter. In 2001, Intel Corporation (“Intel”) acquired LightLogie and all of its intellectual property rights in exchange for $409,000,000 in stock. On May 13, 2001, Shum became aware of Intel’s purchase of LightLogie and the existence of the patents in suit.[2]
*1275 Shum initiated the instant lawsuit after learning of Intel’s acquisition of LightLogic. In his complaint, Shum made the following allegations that are relevant to this appeal. According to Shum, Verdiell had engaged in fraudulent conduct by misappropriating the technology developed by Shum at Radiance. During the pendency of Shum’s '022 patent application, Verdiell informed Marek Alboszta, the patent agent who prosecuted that patent application on behalf of Shum, that he was an inventor of the subject matter described in Shum’s patent application. In response, Alboszta informed Shum that Verdiell would have to be added as an inventor on the application; otherwise the patent would be invalid. Verdiell ultimately instructed Alboszta to abandon the patent application, which he did on November 17,1997.
Although Shum and Verdiell were business partners, Verdiell did not inform Shum that he had incorporated LightLogic three days prior to the abandonment of the '022 patent application. Shum further alleged that Verdiell formed LightLogic as a vehicle for filing patent applications based on technology developed at Radiance. Shum asserts that that included the patent application that Verdiell filed one day after the dissolution of Radiance, which, according to Shum, is virtually identical to Shum’s abandoned '022 patent application. In other words, Shum claims that Verdiell filed an application solely in Verdiell’s name that is virtually identical to that Shum had filed in his name, but that Verdiell had instructed be abandoned. Additionally, Shum alleged that Verdiell engaged in other questionable activity, including transferring bank accounts so that Radiance’s funds were under Verdiell’s sole control, excluding Shum from meetings with Radiance investors, removing Shum’s name as “principal investigator” from government contracts with Radiance, and withholding critical information from Shum.
On May 13, 2002, Shum filed a complaint against numerous defendants, including Verdiell, LightLogic, and Intel (“appel-lees”) in state court alleging fraud, unjust enrichment, and other state law tort claims. On July 9, 2002, the case was removed to federal court. Appellees moved to dismiss the complaint, which the court granted. On December 19, 2002, Shum filed a second amended complaint. The amended complaint added a cause of action for correction of inventorship under 35 U.S.C. § 256, in addition to the state law claims. Appellees moved to dismiss the second amended complaint, which the court granted in part and denied in part on March 25, 2003. The court dismissed Shum’s unjust enrichment claim on the pleadings, but allowed Shum to proceed with his inventorship, fraud, fraudulent concealment, breach of fiduciary duty, and breach of contract claims. On February 13, 2004, appellees moved for summary judgment and to bifurcate the trial. On April 27, 2004, the district court denied the summary judgment motions, but granted the motion to bifurcate the inventorship and state law claims. The court ordered that the inventorship cause of action be tried to the court before the state law claims were tried to a jury.
The bench trial on the correction of inventorship issue commenced on January 10, 2005. On June 21, 2005, the court issued an order stating that Shum had not met his burden of proving by clear and convincing evidence that he was an inventor on any of the patents at issue. Appel-lees then filed renewed motions for sum *1276 mary judgment on the remaining state law claims. The court granted summary judgment and entered judgment in their favor on January 12, 2006.
Shum timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).
DISCUSSION
On appeal, Shum argues that under Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 8 L.Ed.2d 988 (1959), the district court’s decision to bifurcate the claims and to conduct a bench trial on the inventorship issue prior to a jury trial on the state law claims violated his constitutional right to a jury. According to Shum, his inventorship claim and state law claims share common factual issues that are “inextricably intertwined,” and thus a jury trial should have preceded a bench trial. Shum further argues that the court committed numerous errors in reaching its conclusions with regard to the inventorship determination. Additionally, Shum asserts that summary judgment should not have been granted on the state law claims because the court’s erroneous inventorship decision had a dispositive impact on those claims, and also because the district court committed numerous errors in reaching its decision.
Appellees respond that the court did not err in holding a bench trial on the inven-torship issue first because the inventorship claim and the state law claims do not share common underlying factual issues. As such, appellees assert that the rule set forth in Beacon Theatres is not implicated. Defendants further assert that the court did not err in concluding that Shum was not an inventor on any of the patents in suit. Lastly, defendants contend that the court properly granted summary judgment on the state law claims.

A. Seventh Amendment Right to a Jury Trial

We first address Shum’s arguments concerning his right to a jury trial. A trial court’s decision to bifurcate a trial is reviewed for an abuse of discretion. Danjaq v. Sony, 263 F.3d 942, 961-62 (9th Cir.2001). A court has broad discretion with regard to trial management. Federal Rule of Civil Procedure 42(b) provides:
The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim ... always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.
Fed.R.Civ.P. 42(b) (emphasis added). As the rule acknowledges, the court’s discretion is not without limits. When deciding whether issues should be separately tried, trial courts must ensure that a litigant’s constitutional right to a jury is preserved. “Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.” Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 79 L.Ed. 603 (1935).
In Beacon Theatres, the Supreme Court addressed the importance of the order in which legal and equitable claims are to be tried in one suit. While recognizing that “the same court may try both legal and equitable causes in the same action,” the Supreme Court held that “only under the most imperative circumstances ... can the right to a jury trial of legal issues be lost through prior determination of equitable claims.” Id. at 508, 510-11, 79 S.Ct. 948. The Court concluded that the trial court erred by conducting a bench trial on the *1277 equitable claim at issue, thereby precluding a jury trial on the legal claims, when the equitable claim resolved factual issues that were “common” to the legal claims. Thus, under Supreme Court precedent, when legal claims involve factual issues that are “common with those upon which [the] claim to equitable relief is based, the legal claims involved in the action must be determined prior to any final court determination of [the] equitable claims.” Dairy Queen, Inc. v. Wood, 369 U.S. 469, 479, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). Accordingly, in order to resolve the issue presented to us, we must determine whether this case involves both equitable and legal claims, and if so, whether those claims share common factual issues.
We agree with Shum that this case does involve both equitable and legal claims, that his inventorship claim and at least one of his state law claims share common facts, and thus that he was improperly denied a jury trial on the facts underlying his state law claims. With respect to the first inquiry, namely, whether this case involves both equitable and legal claims, that issue is largely undisputed by the parties. A correction for inventorship claim under section 256 creates a cause of action in federal courts that authorizes a district court to resolve inventorship disputes over issued patents. MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d 1568, 1570 (Fed.Cir.1989). At oral argument, the parties agreed that an action for correction of inventorship under § 256, standing alone, is an equitable claim to which no right to a jury trial attaches. Additionally, the parties do not dispute that Shum’s asserted state law claims are legal claims to which Shum would be entitled to a jury determination.
We next consider whether Shum’s equitable claim and any of the asserted legal claims share common factual issues. With regard to the correction of inventorship claim under § 256, “the critical question for joint conception is who conceived, as that term is used in the patent law, the subject matter of the claims at issue.” Ethicon v. U.S. Surgical Corp., 135 F.3d 1456, 1460 (Fed.Cir.1998). “Conception is the touchstone of inventor-ship, and each joint inventor must generally contribute to the conception of the invention.” Board of Educ. ex rel. Bd. of Trustees of Fla. State Univ. v. Am. Bioscience, Inc., 333 F.3d 1330, 1337-38 (Fed. Cir.2003) (internal quotations omitted). “Conception is the ‘formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.’ ” Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1376 (Fed. Cir.1986). As such, in order to prove that he is an inventor of the claimed inventions, Shum was required to demonstrate that he conceived the inventions. Id. at 1338. Thus, the facts surrounding the inventor-ship claim concern the degree of Shum’s inventive contribution to the claimed inventions, which necessarily include, inter alia, when and where the claimed inventions were conceived, and by whom.
With regard to Shum’s state law claims, the record demonstrates that Shum asserted a general fraud claim. In order to establish fraud under California law, one must prove “a representation, usually of fact, which is false, knowledge of its falsity, intent to defraud, justifiable reliance upon the misrepresentation, and damage resulting from that justifiable reliance.” Stansfield v. Starkey, 220 Cal. App.3d 59, 72-73, 269 Cal.Rptr. 337 (Cal. Ct.App.1990). Here, Shum’s fraud claim was based, in part, on his assertion that Verdiell made misrepresentations to the Patent and Trademark Office and third parties that he was the sole inventor of the patents in suit. Indeed, appellees even *1278 acknowledge in their brief that “Shum’s fraud-based claims were originally focused on the allegation that Verdiell lied about being the true inventor of the subject technology.” Appellees Br. at 61. Thus, the alleged misrepresentations involve Verd-iell’s statements that he was the sole inventor of the patents in suit. As such, in order to prove his fraud claim, Shum would have been required to prove the falsity of that representation by establishing, at the very least, that Verdiell did not solely conceive the inventions. Indeed, a showing that Shum was a joint inventor, if not the sole inventor, of the claimed inventions proves such falsity. In this regard, the critical question regarding the fraud claim again centers on conception. Thus, the facts relating to the fraud claim, namely, Shum’s alleged contribution to the claimed invention, are common, if not identical, to the facts underlying the inventor-ship claim.
Notably, both the trial court and the appellees acknowledge the commonality between the two claims at various points in the record. In its bifurcation order, the court noted that:
Like the majority of Shum’s claims, an action for fraud against Verdiell chiefly relies on the factual determination of inventorship. If Verdiell was not an inventor of the patent applied for, he misrepresented his status as an inventor, caused Shum to withdraw the patent based on that misrepresentation, and subsequently filed a fraudulent patent listing himself as the sole inventor. Thus, the factual issue of inventorship is a central issue in the determination of fraud.
Moreover, appellees admit in their brief, “[ojnce the district court decided that Verdiell, and not Shum, had truly invented the technology, th[e] fraud claims were eviscerated.” Appellees also contend that “[i]f this Court affirms the district court’s inventorship ruling, Shum’s arguments that Verdiell misrepresented or concealed the true inventor of the technology necessarily fail.” Thus, the record underscores that Shum’s inventorship claim is “inextricably intertwined” with at least one of his state law claims.
We disagree with appellees’ assertion that the trial court’s decision must be upheld in light of Ethicon v. U.S. Surgical Corp., 135 F.3d 1456 (Fed.Cir.1998). Ap-pellees argue that Ethicon presented nearly identical procedural circumstances, and thus that our holding in that case, in which we upheld the trial court’s decision to hold an extensive hearing on the asserted in-ventorship claim prior to a trial on infringement, should be applied here. That case, however, differs substantively from this one. While a § 256 cause of action was the equitable claim at issue in Ethi-con, the legal claim involved infringement. Unlike a claim for fraud that is premised on an allegation that the named inventor misrepresented that he was the sole inventor, a claim for infringement does not share common factual issues with a claim for inventorship. A claim for infringement requires factual determinations regarding whether an accused product falls within the scope of a claim. In contrast, as discussed above, an inventorship claim concerns the identity of the person(s) who conceived the invention. Thus, Ethicon is distinguishable from this case.
For similar reasons, appellees’ reliance on our decisions in Gardco Manufacturing, Inc. v. Herst Lighting Co., 820 F.2d 1209 (Fed.Cir.1987), and Agfa Corp. v. Creo Products, Inc., 451 F.3d 1366 (Fed. Cir.2006), is likewise misplaced. In Gard-co, we held that the district court did not abuse its discretion in trying an inequitable conduct claim prior to a jury trial on the validity and infringement causes of action. In sustaining the court’s decision, *1279 we held that “the eonduct-of-the-applicant-in-the-PTO issue raised in the nonjury trial and the separated infringement/validity issues are distinct and without commonality either as claims or in relation to the underlying fact issues.” Gardco, 820 F.2d at 1213. We found that the district court “explicitly refused to make any findings relating to the patentability of the claimed invention, in view of the undisclosed art or otherwise, and made no finding on infringement.” Id. As such, we held that the rule set forth in Beacon Theatres did not apply. Similarly, in Agfa, we upheld the district court’s decision to hold a bench trial on inequitable conduct prior to a jury trial on infringement and validity. We concluded that while inequitable conduct and validity questions “overlap in the consideration of some aspects of the same relevant evidence, they do not involve a common issue.” Agfa, 451 F.3d at 1372. Because the legal claims in Gardco and Agfa likewise involved infringement and validity, rather than fraud based on mis-presentations relating to inventorship, those cases do not control.
We thus conclude that commonality exists between the factual issues underlying the inventorship and fraud claims. While Shum would not be entitled to a jury trial on the § 256 inventorship claim standing alone, given the co-pendency of the asserted fraud claim, a jury should determine the facts regarding inventor-ship. Accordingly, the court’s decision to try the inventorship claim before a jury trial on the state law claim ran afoul of the Seventh Amendment, and thus was an abuse of discretion. See Cabinet Vision v. Cabnetware, 129 F.3d 595, 600 (Fed.Cir.1997) (holding that the court’s equitable determination was constrained by the Seventh Amendment when there was commonality between the facts underlying an inequitable conduct claim and a Walker Process counterclaim). Because Shum was improperly denied a jury trial on legal issues, the case must be remanded for a trial before a jury. See Lytle v. Household Mfg., Inc., 494 U.S. 545, 553, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990) (noting that a new trial is required when a trial court erroneously resolves an equitable claim prior to resolution of a legal claim).

B. Unjust Enrichment

Shum separately appeals the district court’s dismissal on the pleadings of his unjust enrichment claim. Prior to the bench trial on inventorship, the court dismissed Shum’s claim for unjust enrichment after concluding that it was “merely dupli-cative and dependent” upon the fraudulent concealment claims. Shum argues that the elements of an unjust enrichment claim are different from those of fraudulent concealment under California law, and thus that he was improperly denied an opportunity to prove that claim. Appellees respond that the claim was correctly dismissed because unjust enrichment is not recognized under California law as a separate cause of action. Moreover, appellees argue that an unjust enrichment claim must be dismissed when it is based on another failed cause of action.
Under California law, unjust enrichment claims can exist as a separate cause of action when “the claim is grounded in equitable principles of restitution.” Hirsch v. Bank of Am., 107 Cal.App.4th 708, 721-22, 132 Cal.Rptr.2d 220 (Cal.Ct.App.2003); Nordberg v. Trilegiant Corp., 445 F.Supp.2d 1082 (N.D.Cal.2006). In his second amended complaint, Shum alleged that appellees “were unjustly enriched by the false exclusivity of the patent and the patent application.” Shum sought to recover, “in equity, all amounts which unjustly enriched defendants” at his expense. Thus, Shum sought restitution based on a theory of unjust enrichment and should have been able to litigate his claim. More *1280 over, the elements of a fraudulent concealment claim and an unjust enrichment claim differ.[3] As such, the court’s dismissal of the claim on the basis that it was “merely duplicative” of the fraudulent concealment claim, without further elaboration, cannot be sustained. Accordingly, we conclude that the court erred in dismissing Shum’s unjust enrichment claim on the pleadings.
CONCLUSION
For the foregoing reasons, we vacate the district court’s determination on the inven-torship claim and its grant of summary judgment on the remaining state law claims, reverse the court’s dismissal of the unjust enrichment claim, and remand the case for further proceedings consistent with this opinion.

VACATED, REVERSED, AND REMANDED

. Optoelectronic packages are devices that are “used to transmit light carrying data into fiber optic cable in order to send information at high speeds over fiber optic networks.” Shum v. Intel Corp., No. C-02-3262 (N.D. Cal. June 21, 2005) at 1.

. The patents in suit include U.S. Patents 5,977,567, 6,376,268, 6,207,950, 6,227,724, *1275 6,586,726, 6,585,427, and 6,252,726. Verd-iell is a named inventor on all of those patents.

. The elements of an unjust enrichment claim are “receipt of a benefit and unjust retention of the benefit at the expense of another." Lectrodryer v. SeoulBank, 77 Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881 (Cal.Ct.App.2000). In contrast, the elements of a fraudulent concealment claim are: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." Hahn v. Mirda, 147 Cal.App.4th 740, 748, 54 Cal.Rptr.3d 527 (Cal.Ct.App.2007).