# United States Court of Appeals for the Federal Circuit

---

**FRANK T. SHUM,**
*Plaintiff-Appellant,*

v.

**INTEL CORPORATION, JEAN-MARC VERDIELL, AND LIGHTLOGIC, INC.,**
*Defendants-Appellees.*

---

2010-1109

---

Appeal from the United States District Court for the Northern District of California in case no. 02-CV-3262, Senior Judge D. Lowell Jensen.

---

Decided: December 22, 2010

---

PAUL F. KIRSCH, of San Francisco California, argued for plaintiff-appellant. On the brief was GREGORY S. CAVALLO, Shopoff & Cavallo LLP, of San Francisco, California.

MARK C. FLEMING, Wilmer Cutler Pickering Hale and Dorr LLP, of Boston, Massachusetts, argued for defendants-appellees. With him on the brief were RICHARD W.

O'NEILL, and WILLIAM F. LEE; and SETH P.WAXMAN, BRIAN M. BOYNTON, of Washington, DC.

---

Before NEWMAN, LOURIE, and PROST, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* PROST. Dissenting opinion filed by *Circuit Judge* NEWMAN.

PROST, *Circuit Judge*.

This appeal reviews an award of costs in a case where no party prevailed on every claim. The underlying action was filed by an optical engineer named Frank Shum ("Shum"). Shum sought correction of inventorship for seven patents originally issued to his former business partner, Jean-Marc Verdiell ("Verdiell"), arguing that he, Shum, should be named as the sole inventor or co-inventor. *See* 35 U.S.C. § 256. Shum also asserted numerous claims under California law, all of which allegedly stemmed from the sale of Verdiell's company, LightLogic, Inc. ("Lightlogic"), to Intel Corporation ("Intel").

The district court correctly observed that both sides won on some claims and lost on others. Shum, for instance, succeeded on some of his inventorship claims, with the jury finding him to be the co-inventor of claims in five of the seven patents-in-suit. As for defendants Verdiell, Intel, and LightLogic, before trial, the district court granted their motion to dismiss some of Shum's state law claims[1] for failure to state a claim. *See* Fed. R.

---

[1] These claims were for conversion, rescission, negligent misrepresentation, intentional interference with contractual relations, and successor liability.

Civ. P. 12(b)(6). The district court also granted summary judgment in favor of the defendants on Shum's claims for breach of fiduciary duty and fraudulent concealment. Finally, after the jury was unable to reach a verdict on the remaining state law claims,[2] the district court granted defendants' post-verdict motion for judgment as a matter of law ("JMOL"). The final judgment in this action entitles Shum to be named as a co-inventor for claims in five of the seven patents-in-suit, but entitles him to none of the more than $409 million he sought in monetary damages.

Based on this mixed result, the district court concluded that both parties "prevailed" within the meaning of Rule 54(d) of the Federal Rules of Civil Procedure, which governs the award of costs and fees accrued during trial. Acknowledging, however, that Rule 54 might only countenance a single "prevailing party," the district court held in the alternative that the defendants were the "prevailing party." The parties were then each awarded the costs associated with the claims they respectively won. After offsetting these amounts, the result was a net costs award of $134,368.28 to defendants, taxed against Shum. Shum timely appealed.

On appeal, Shum argues that the award of costs must be vacated and recalculated on remand because there can only be one prevailing party. Moreover, according to Shum, he is that prevailing party. Though Shum lost on all of his California law claims and failed to recover any fraction of the more than $409 million in damages he sought, Shum nevertheless argues that his limited victory

---

[2]    These claims were for unjust enrichment, breach of contract, and intentional misrepresentation.

on the question of inventorship suffices to make him a prevailing party. Further, as a prevailing party, Shum contends that he is entitled to all of his costs, while defendants are entitled to none of theirs.

We agree that there can be, by definition, only one prevailing party. We nevertheless affirm the award of costs because we agree with the district court's alternative holding that defendants are the prevailing party. Though Shum's victory on his co-inventorship claims changes the names appearing on those patents, it has not materially altered the legal relationship among the parties. Because Shum and Verdiell signed a Plan of Liquidation giving each equal rights to independently exploit the intellectual property arising from their ephemeral business partnership, this action has not materially altered the defendants' behavior in a way that directly benefits Shum. On the other hand, defendants were not liable to Shum for $409 million. Accordingly, the district court did not abuse its discretion in awarding costs to each party with respect to the claims on which they each prevailed, then netting those sums to arrive at the final figure.

BACKGROUND

This appeal is only about costs, not the merits. The merits were appealed separately and are the subject of a companion opinion, *Shum v. Intel Corp.*, No. 2009-1385, -1419. For the purposes of reviewing costs, the following facts matter.

This appeal is the second to this court and but the latest episode in a protracted legal battle, all traceable to a brief and stormy business partnership. Shum and Verdiell are both engineers who work in the optoelectronics

field. In 1997, Verdiell and Shum became equal share-holders in a company called Radiance Design ("Radiance"). A brief nine months later, Radiance was formally dissolved pursuant to a plan of liquidation ("Liquidation Plan" or "POL").

The Liquidation Plan gave both parties equal rights to independently exploit the intellectual property developed by Radiance. After Radiance dissolved, Verdiell filed for, and was issued, the patents that are the subject of this suit. These patents were subsequently assigned to Verdiell's company, LightLogic. In 2001, Intel purchased LightLogic, including all of its intellectual property rights, for $409 million.

Upon learning of the sale, Shum filed this action. In his amended complaint, Shum asserted that he should be named as the co-, if not sole, inventor of claims in the seven patents-in-suit.[3] In addition to these federal inventorship claims, Shum alleged numerous violations of California law: conversion, rescission, negligent misrepresentation, intentional interference with contractual relations, successor liability, breach of fiduciary duty, fraudulent concealment, unjust enrichment, breach of contract, and intentional misrepresentation.

The first appeal to this court occurred after the district court dismissed Shum's claim for unjust enrichment and granted defendants' motion to bifurcate the inventorship and state law claims. Pursuant to the district court's order, the inventorship claims were tried first in a bench trial, after which the state law claims were to be tried by

---

[3] The patents are U.S. Patent Nos. 5,977,567 ("'567 patent"), 6,376,268 ("'268 patent"), 6,207,950 ("'950 patent"), 6,227,724 ("'724 patent"), 6,586,726 ("'6726 patent"), 6,585,427 ("'427 patent"), and 6,252,726 ("'2726 patent").

jury. *Shum v. Intel Corp.*, 499 F.3d 1272, 1275 (Fed. Cir. 2007).

Following the bench trial, the district court found that Shum had not shown by clear and convincing evidence that he was an inventor of any claims in the asserted patents. Defendants then renewed their motions for summary judgment on Shum's state law claims. The district court granted the motions and entered judgment for the defendants. Shum appealed to this court ("first appeal"). We vacated the judgment, reversed the dismissal of Shum's unjust enrichment claim, and remanded. *Id.* at 1276-77. In doing so, we agreed that under *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959), the district court abused its discretion in holding a bench trial on Shum's inventorship claim before trying his state law claims to a jury. *Shum*, 499 F.3d at 1276-79. Because Shum's claims had common factual issues, we concluded that Shum was entitled to a jury trial on his state law claims prior to any court determination of his inventorship claim. *Id.* at 1279. We also reinstated Shum's unjust enrichment claim, since it was neither "duplicative" nor "dependent" on Shum's fraudulent concealment claims. *Id.* at 1279-80.

The case returns to us after further proceedings below. Shum has had his jury trial on the inventorship and state law claims. Before trial, Shum withdrew his inventorship claims with respect to the '2726 patent. For the remaining six patents,[4] Shum limited his claims at trial to co-inventorship, thus abandoning his prior, alternative

---

[4] The six patents disputed at trial were the '567 patent, '268 patent, '950 patent, '6726 patent, '724 patent, and '427 patent.

claims for sole inventorship. The inventorship claims and state law claims for intentional misrepresentation, breach of contract, and unjust enrichment were submitted to the jury.

The jury found that Shum was the co-inventor of some claims in five of six patents at issue during trial.[5] The jury was unable to reach a verdict on Shum's inventorship claims for the '427 patent and for one additional claim in the '724 patent.[6] It also hung on all of Shum's remaining state law claims. After declaring a mistrial, the district court entertained defendants' motion for judgment as a matter of law. Consistent with the jury verdict, the court then entered judgment for Shum on his co-inventorship claims for the five patents on which the jury reached a verdict. It then entered judgment for defendants on the remaining claims, finding that Shum failed to introduce sufficient evidence to prove liability or damages for the state law claims, or to permit a reasonable jury to find Shum the co-inventor of the '427 patent or the additional claim of the '724 patent.

Following entry of judgment, both parties submitted bills of costs pursuant to Federal Rule of Civil Procedure 54. The Clerk of Court taxed costs of $507,644.82 in defendants' favor and costs of $195,523.27 in Shum's favor. Offset against each other, Shum thus owed $313,121.55 in costs to defendants. Before the district court, Shum moved to deny defendants costs on two

---

[5]    As stated previously, Shum withdrew his correction of inventorship claims for the '2726 patent before trial.

[6]    The jury unanimously found that Shum was the inventor of claims 1, 7, 14, and 16 of the '724 patent.

grounds. First, Shum argued that defendants were not entitled to costs because they were not the "prevailing party" within the meaning of Rule 54. Second, Shum argued that certain items in defendants' bill of costs should be disallowed.

With modifications to certain cost items submitted by defendants, the district court upheld the award of costs. As to the threshold question of who was the prevailing party, the district court found that Shum and defendants were both prevailing parties, because both had prevailed with respect to some claims. Acknowledging that the law might require it to choose a single prevailing party, the district court held in the alternative that defendants were the prevailing party. In support of this determination, the district court noted that rather than being ordered to pay the over $400 million in damages sought by Shum, defendants owed nothing. Further, defendants retained their inventorship rights and ability to commercially exploit the covered technology. Though Shum gained legal title to five patents as a co-inventor, the district court found this limited victory did not materially alter the parties' legal relationship because Shum already had the right to commercially exploit the covered technology under the Radiance POL.

Shum timely appealed the district court's award of costs. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).[7]

---

[7] We reject Shum's argument that the district court lacked subject matter jurisdiction based on Shum supposedly lacking a "concrete financial interest" in the patents-in-suit. At minimum, Shum's state law claims necessarily depended on the resolution of a substantial question of federal patent law, inventorship. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09 (1988);

ANALYSIS

Rule 54(d)(1) governs the award of costs. It provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). An award of costs thus involves two separate inquires. *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1407 (Fed. Cir. 2004). First, who is the "prevailing party" within the meaning of Rule 54(d)(1). Second, how much (if any) costs should be awarded to the prevailing party.

We address these questions below.

I. Prevailing Party

Federal Circuit law defines "prevailing party" for the purposes of patent litigation. *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1182 (Fed. Cir. 1996). Determination of the prevailing party is a question of law

---

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1330 (Fed. Cir. 1998), *overruled in part on other grounds, Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999).

This court's decision in *Larson v. Correct Craft, Inc.* is not to the contrary. 569 F.3d 1319 (Fed. Cir. 2009). Shum is not like the plaintiff in *Larson*, who had already transferred title to the patents for which he sought correction of inventorship, and thus had no ownership interest in the patents-in-suit. *Id.* at 1326-27. Our conclusion that the plaintiff in *Larson* suffered no injury-in-fact sufficient to confer constitutional standing was based on that transfer of ownership rights. No such transfer or assignment has occurred here. Accordingly, Shum had, and continues to have, standing to pursue his correction of inventorship claims under 35 U.S.C. § 256.

reviewed de novo. *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004).

On appeal, Shum argues that it was error for the district court to declare both him and the defendants "prevailing parties" within the meaning of Rule 54(d)(1). We agree.

The district court is correct that both parties won or, said another way, "prevailed," on certain claims and lost on others. But just because a party can be said to have "prevailed" on a claim does not necessarily make him a "prevailing party" as the term is used in Rule 54.

The question then is whether Rule 54 limits how many "prevailing parties" there can be in a particular case. To answer that question, we begin with the text of the statute. Rule 54(d)(1) awards costs to "*the* prevailing party." Fed. R. Civ. P. 54(d)(1) (emphasis added). In our view, the plain language of Rule 54 unambiguously limits the number of prevailing parties in a given case to one because the operative term, "prevailing party," is singular. Had Congress intended for there to be multiple prevailing parties, it could easily have said so, substituting "parties" for "party."

Our conclusion that there can only be one prevailing party in a given case is reinforced by the use of the definite article "the" before "prevailing party." Alternatives like "a," "any," or "some" lead to phrases like "*a* prevailing party" and "*any* prevailing party." These hypothetical, unenacted versions of Rule 54 could be read to suggest that it is possible to have more than one prevailing party in an action. However, none of these theoretical alternatives is what Congress enacted. In our view, the word Congress did use, "the," is evidence that what follows,

"prevailing party," is specific and limited to a single party. *See Rapanos v. United States*, 547 U.S. 715, 732 (2006) (relying on use of "the" as evidence the statute narrowed the type of "waters" at issue); *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004) (relying on use of the definite article as evidence there was "generally only one proper respondent to a given prisoner's habeas petition"); *Freytag v. Comm'r*, 501 U.S. 868, 902 (1991); *see also* Webster's Third New International Dictionary 2368 (1981) (discussing the difference between the indefinite articles "a" and "an" and the definite article "the"). Rule 54(d) has no special rule or exception for mixed judgment cases, where both parties have some claims decided in their favor, as occurred here. Thus, even in mixed judgment cases, punting is not an option; Rule 54 does not allow every party that won on some claims to be deemed a "prevailing party." For the purposes of costs and fees, there can be only one winner. A court must choose one, and only one, "prevailing party" to receive any costs award.[8]

The rub, of course, is choosing the "prevailing party" in a mixed judgment case like this one. To be a "prevailing party," our precedent requires that the party have received at least some relief on the merits. That relief must materially alter the legal relationship between the parties by modifying one party's behavior in a way that

---

[8] That is not to say, of course, that the court must award a prevailing party costs. Depending on the extent and nature of the prevailing party's victory, it may be proper for the trial court to award only low costs or no costs at all. *See Farrar*, 506 U.S. at 115; *Manildra Milling*, 76 F.3d at 1183. As we explained in *Manildra Milling*, even if a party satisfies our prevailing party test, the trial court "retains broad discretion as to how much to award, *if anything*." 76 F.3d at 1183 (emphasis added).

"directly benefits" the opposing party. *Farrar v. Hobby*, 506 U.S. 103, 111-13 (1992); *Manildra Milling*, 76 F.3d at 1182; *see also Inland Steel*, 364 F.3d at 1320; *Former Emps. of Motorola Ceramic Prods. v. United States*, 336 F.3d 1360, 1364 (Fed. Cir. 2003). A party is not required, however, to prevail on all claims in order to qualify as a prevailing party under Rule 54. *See Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. De C.V.*, 464 F.3d 1339, 1347-48 (Fed. Cir. 2006).

Here, our inquiry accordingly focuses on the relief Shum and defendants respectively received. Based on an examination of the parties' respective successes, we hold that defendants are the "prevailing party" for the purposes of Rule 54. As set out in our companion opinion on the merits, *Shum v. Intel Corporation*, No. 2009-1385, -1419, defendants won on all of Shum's state law claims. Before trial even began, the district court dismissed Shum's claims for conversion, rescission, negligent misrepresentation, intentional interference with contractual relations, and successor liability for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). The district court also granted summary judgment in favor of defendants on Shum's claims for breach of fiduciary duty and fraudulent concealment. After the jury hung on Shum's claims for intentional misrepresentation, unjust enrichment, and breach of contract, the district court granted post-verdict JMOL in favor of the defendants on those claims. Defendants also won by post-verdict JMOL on Shum's correction of inventorship claims for the '427 patent and claim 5 of the '724 patent. As a result, defendants do not owe, and thus will not pay, any of the $409 million in damages and restitution sought by Shum. Further, defendants retain sole ownership and inventorship of the '427 patent and claim 5 of the '724 patent. We agree with the district court that the relief defendants obtained on these claims

alters the legal relationship of the parties: in addition to avoiding significant monetary liability, the judgment in defendants' favor will have res judicata effect in any future action. *See Inland Steel*, 364 F.3d at 1320-21.

In contrast, Shum's victory was limited to his claims for correction of inventorship. For five of the seven patents originally at issue, Shum successfully established that he was the co-inventor of some claims. This determination gives Shum a property interest in the five patents. It also requires the U.S. Patent and Trademark Office to correct the inventorship and assignments of those patents to reflect Shum's status as a co-inventor.

Shum argues that he should be considered a "prevailing party" because he obtained some of the benefits he sought in bringing suit—namely, correction of inventorship. Shum is correct that his limited victory "alter[ed] the legal relationship between the parties." *Manildra Milling*, 76 F.3d at 1182. As a result of the judgment, Shum is now the co-owner of five patents Intel bought from Verdiell. Shum will also henceforth be listed as the co-inventor, while Verdiell has lost his status as sole inventor.

Not every alteration in the legal relationship between parties, however, satisfies our prevailing party test. Instead, the alteration must be (1) material and (2) "modify[] the defendant's behavior in a way that directly benefits the plaintiff." *Manildra Milling*, 76 F.3d at 1182 (quoting *Farrar*, 506 U.S. at 111-13). Despite Shum's protestations to the contrary, the question of inventorship was not the "central issue" in this case. As the district court found, this case was about the money. Indeed, Shum initially pled only state law claims, for which he requested over $409 million in damages and restitution;

the correction of inventorship claims were added later, in a subsequent amendment.

We find it dispositive that Shum's limited victory—a declaration of co-inventorship—has not met the second requirement under our prevailing test:  the victory has not modified defendants' behavior in a way that significantly benefits Shum. *Id.* As we explained in *Singer v. Office of Senate Sergeant at Arms*, 173 F.3d 837, 842 (Fed. Cir. 1999), it is not enough that the issue was contested, actually litigated, and ultimately decided in a party's favor; the recognition of Shum's co-inventorship status also had to confer some material benefit on Shum.  We agree with the district court that Shum received no material benefit with respect to any of the defendants.

For example, with respect to Verdiell, Shum's co-inventorship status has not given Shum a competitive advantage or required Verdiell to change his behavior. Under the POL which dissolved Radiance, Shum and Verdiell

> acknowledge[d] and agree[d] that, after the approval of this Plan [POL], each of them *shall be entitled, without any liability or duty to account to the Corporation or to the other, to pursue any and all such other business activities as they shall desire*, even if such activities are in competition with the business of the Corporation and even if they take, or attempt to take, a business opportunity that the Corporation could have itself pursued.

(emphasis added.)  The district court found that the declaration of co-inventorship did not give Shum any rights in the patented technology that he did not already have under the POL.  We agree.  Even before Shum was

declared a co-inventor, the POL gave him the right to exploit the covered technology without incurring any financial liability or legal obligations to Verdiell. *Cf. Singer*, 173 F.3d at 842 (holding that official recognition of depression did not make petitioner a "prevailing party" because it entitled him to no benefits beyond those the agency was already giving him).

Similarly, Shum's co-inventorship status does not give Shum a competitive advantage with respect to Intel or LightLogic, nor does it require either company (Intel or LightLogic) to change its behavior. By purchasing Light-Logic, including Verdiell's share of the patents, Intel became a co-owner of the patents-in-suit. As a co-owner, Intel acquired and retains the right to make, use, license, offer to sell, or sell the inventions covered by the patents, with or without Shum's consent. *See* 35 U.S.C. § 262.

Shum's victory is thus unlike the success obtained by the prevailing parties in cases like *Farrar* and *Manildra Milling*. In *Farrar*, plaintiffs obtained an award of nominal damages; in *Manildra Milling*, the plaintiff won a declaration that the competitor's patent was invalid. *Farrar*, 506 U.S. at 111-12; *Manildra Milling*, 76 F.3d at 1183; *see also Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 670 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998) (noting that obtaining an injunction might also constitute a "benefit" qualifying a party for prevailing party status). Likewise, an injunction or judgment of infringement can both satisfy the prevailing party test because each constitutes "relief on the merits which alters . . . the legal relationship of the parties." *Inland Steel*, 364 F.3d at 1320; *Kemin Foods*, 464 F.3d at 1348. As this court stated in *Manildra Milling*, a party that obtains an injunction, declaration of patent invalidity, or judgment of infringement gains

"significant latitude" and frequently a "competitive edge" vis-à-vis the opposing party. 76 F.3d at 1183. Here, by contrast, Shum's victory resulted in no equivalent gain because the POL already gave him those rights.

Because we agree with the district court's alternate holding that defendants are the "prevailing party" within the meaning of Rule 54, we turn to the reasonableness of the cost award.

## II.  Cost Award

Whether an award of costs is reasonable is determined under the law of the regional circuit. *Manildra Milling*, 76 F.3d at 1183. Accordingly, in this case we apply Ninth Circuit law. The Ninth Circuit reviews the reasonableness of a costs award for abuse of discretion and is "hesitant" to find an abuse of the trial court's broad discretion over costs. *K-S-H Plastics, Inc. v. Carolite, Inc.*, 408 F.3d 54, 60 (1969). This deferential review is still guided, however, by Rule 54(d)(1), which the Ninth Circuit has construed as creating a presumption in favor of awarding costs to the prevailing party. *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (Fed. Cir. 2003); *Dawson v. City of Seattle*, 435 F.3d 1054, 1070 (9th Cir. 2006); *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944 (9th Cir. 2003). To overcome this presumption, the losing party must establish a reason to deny costs and the district court must give specific reasons for refusing to award costs. *Champion Produce*, 342 F.3d at 1022; *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999).

In this case, Shum argues that the district court abused its discretion by awarding defendants part of their costs associated with the first bench trial, as well as

various costs associated with demonstrative exhibits, copying charges, and expert witness fees.

Under the Ninth Circuit's deferential standard of review, we cannot agree. It was not error for the district court to wait until the case was finally decided, after the second trial, to determine the prevailing party and award costs. When it finally did award costs, the district court carefully considered and meticulously explained its reasoning. It was not unreasonable for the district court to consider which claims the parties respectively won, or to reduce the prevailing party's costs award to reflect the extent of its victory (i.e., the claims it lost). Here, the district court accounted for the claims defendants lost in precisely that fashion: it reduced defendants' costs associated with the claims they won by the costs incurred by Shum on the claims he won. Further, given that defendants ultimately won on the all of the state law claims and that Shum's limited victory on some inventorship claims did not modify defendants' behavior in a way that materially benefited Shum, the district court did not abuse its discretion by awarding half of the costs associated with the first bench trial to defendants. As for Shum's other quarrels with the costs award, Shum has given no reasons on appeal that were not already addressed and reasonably rejected by the district court. Shum has thus failed to overcome the Ninth Circuit's strong presumption of awarding costs to the prevailing party.

## CONCLUSION

For the foregoing reasons, we hold that defendants were the prevailing party and the district court did not abuse its discretion in considering the parties' relative success when awarding costs in this mixed judgment case.

The award of costs is affirmed.

**AFFIRMED**

# United States Court of Appeals
## for the Federal Circuit

---

**FRANK T. SHUM,**

*Plaintiff-Appellant,*

**v.**

**INTEL CORPORATION, JEAN-MARC VERDIELL,**
**AND LIGHTLOGIC, INC.,**

*Defendants-Appellees.*

---

2010-1109

---

Appeal from the United States District Court for the Northern District of California in Case No. 02-CV-3262, Senior Judge D. Lowell Jensen.

---

NEWMAN, *Circuit Judge*, dissenting.

The award of "costs" is rarely of sufficient legal substance to warrant appellate attention, much less appellate dissent. But here the award is so flawed that it indeed was appealed, and its affirmation by my colleagues raises important concerns of justice and fairness, as well as conformity with rule and precedent.

On his first appeal to the Federal Circuit, Mr. Shum obtained a reversal and remand of the major issue in dispute, that is, inventorship of five patents obtained by Verdiell and sold to Intel on the Radiance technology. *Shum v. Intel Corp.*, 499 F.3d 1272 (Fed. Cir. 2007).

Despite Shum's success on appeal, the district court awarded Intel $77,200 in costs for the first trial, which was half the amount submitted. Upon the second trial, Mr. Shum obtained unanimous jury verdicts that he is the joint inventor of five patents on the technology for which Intel paid $409 million. Thus Shum obtained the right to make, use, sell, license, and otherwise exploit the inventions that Verdiell had patented as his sole invention and that Intel had purchased for exclusive ownership. Nonetheless the district court, holding that neither side prevailed or alternatively that the defendants prevailed, awarded net costs in favor of defendants and against Shum, in the amount of $134,368.28. This award is contrary to precedent, and inappropriate.

This is not the rare case in which a court might exercise its discretion, in the interest of justice, to mitigate the burdens of trial. I must protest this unusual ruling, whereby the losing side that presented a more expensive case[1] is awarded the amount by which its costs exceeded those of the prevailing party. From my colleagues' endorsement of this award of net costs to the losing party, I respectfully dissent.

## DISCUSSION

The Federal Rules provide that "costs" shall be taxed in favor of the prevailing party. By every measure Shum is the prevailing party, not the defendants. Shum obtained the judgment of joint inventorship that established his ownership in common of five of the six patents previously held exclusively by the defendants. When the district court refused to retry the deadlocked issues

---

[1] For example, Intel's bill of costs includes over $200,000 for "demonstrative exhibits," "graphics," and "models," for use at trial, on which Shum spent less than $60,000.

concerning monetary remedy and instead decided them "as a matter of law" in favor of the defendants, the defendants avoided damages, but they still lost exclusive ownership of the patented technology. This did not convert the defendants into "the prevailing party."

"Because a plaintiff prevails by achieving some of the benefit sought in bringing suit, it follows that a defendant is a prevailing party only if the plaintiff obtains no relief whatsoever from the litigation." 10 James Wm. Moore, *Moore's Federal Practice* §54.171[3][c], at 54-310 (3d ed. 2010). Whatever the monetary value of Shum's victory, it is apparent that Intel and Mr. Verdiell did not prevail, for they lost the exclusivity of five patents for which Shum was adjudged the joint inventor, and simply avoided monetary damages when the jury hung and the district court refused a retrial.

The Court explained in *Farrar v. Hobby*, 506 U.S. 103 (1992), that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111-12. In *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178 (Fed. Cir. 1996), the court applied this reasoning to taxation of costs in patent litigation in which the plaintiff did not obtain monetary damages, but the court held that the plaintiff was the prevailing party because a "judicial declaration that one is free from another's right to exclude alters the legal relationship between the parties." *Id.* at 1183. The jury's verdict granting Mr. Shum co-ownership of five of the six litigated patents was a victory that altered the legal relationship of the parties to Mr. Shum's benefit.

Although it is now final on this appeal that Mr. Shum will not receive a retrial on monetary damages, the Court

explained in *Farrar* that "the prevailing party inquiry does not turn on the magnitude of the relief obtained." 506 U.S. at 114. Mr. Shum now has the unchallengeable right to make, use, and sell for others to use, the five patented inventions "without the consent of and without accounting to the other owners." 35 U.S.C. §262. In *Manildra Milling* this court explained that: "The freedom to practice an invention without fear of suit by the patentee is a valuable commercial benefit. By removing the potential threat of the patentee instituting an infringement action, the competitor necessarily alters the patentee's subsequent behavior to his benefit." 76 F.3d at 1183. The rights Mr. Shum has won here are greater than freedom from suit, for Shum became the co-owner of five patents that had previously been the exclusive property of Verdiell, LightLogic, and now Intel.

My colleagues state that Shum was not the prevailing party because the judgment of joint inventorship and the ensuing co-ownership "did not give Shum any rights in the patented technology that he did not already have under the POL." Maj. Op. at 14. This is plainly incorrect. The trial record is replete with Verdiell's assertions of exclusivity, and that the patented subject matter was not included in the Radiance technology subject to the POL. Intel and Verdiell vigorously disputed Shum's claims, stating that "the issue of inventorship is at the heart of the case" and a "necessary element" of all of the other claims. Defs.' Opp'n to Pl.'s Mot. to Remand at 4-5, *Shum v. Intel Corp.*, No. C 02-03262 (N.D. Cal. Nov. 1, 2002). Only now that Shum has prevailed do Intel and Verdiell proclaim that Shum already had what he won by jury verdict. However, at trial the defendants testified and argued that these patents and the technology they claimed were not part of the Radiance technology and that Shum had no rights in any of it.

Whatever the "prevailing" status of Shum, it is clear that Intel and Mr. Verdiell are not the prevailing party. Applying precedent, Mr. Shum won the judgment that he was a joint inventor of five of the six patents from which he had been excluded, and thus owner in common of these patents. *See Manildra Milling*, 76 F.3d at 1183 (the plaintiff was the prevailing party when the adverse patent was invalidated, although federal and state law claims were lost and no damages were awarded). Shum is now assured that he and his transferees cannot be sued on these patents, and that his right to practice and to grant licenses to the patented subject matter is not subject to challenge. The district court reasoned that Shum's joint invention and co-ownership "did not give Shum a competitive edge over Verdiell in the marketplace." *Shum v. Intel Corp.*, 682 F. Supp. 2d 992, 997 (N.D. Cal. 2009). However, obtaining a competitive edge in the marketplace is not a requirement of being the prevailing party in litigation.

Partial or apportioned costs have on occasion been awarded, when appropriate to the circumstances. *See* 10 Wright & Miller, *Federal Practice & Procedure* §2667 (3d ed. 2010); *Ortho-McNeil Pharm., Inc., v. Mylan Labs. Inc.*, 569 F.3d 1353, 1358 (Fed. Cir. 2009); *K-S-H Plastics, Inc. v. Carolite, Ind.*, 408 F.2d 54, 60 (9th Cir. 1969). This court has observed that costs should be apportioned only under "limited circumstances, such as when the costs incurred are greatly disproportionate to the relief obtained." *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1348 (Fed. Cir. 2006) (citing 10 *Moore's Federal Practice* §54.101[1][b] (3d ed. 2006)). Here the district court did not apportion "greatly disproportionate" costs; the court simply required Shum to pay Intel the amount by which Intel's costs exceeded

Shum's costs. This form of apportionment has no support in precedent or in logic, and in this case is unfair.

When the plaintiff as well as the defendant have lost on significant issues, courts have generally awarded "no costs." *See Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 670 (Fed. Cir. 2000); *Kropp v. Ziebarth*, 601 F.2d 1348, 1358 n.27 (8th Cir. 1979) (where neither party prevails, it is "quite appropriate to deny costs to both parties" (citing *Srybnik v. Epstein*, 230 F.2d 683, 686 (2d Cir. 1956))); *Brunswick-Balke-Collender Co. v. Am. Bowling & Billiard Corp.*, 150 F.2d 69, 74 (2d Cir. 1945) (affirming denial of costs where both parties to a suit involving patent and trademark infringement prevailed in part); 10 *Federal Practice & Procedure* §2668 (3d ed. 2010) (the denial of costs to both sides "has been considered appropriate when neither side entirely prevailed, or when both sides prevailed").

In *Ruiz*, this court held that "neither party prevailed sufficiently to require an award of costs," where the patent was declared invalid but no damages were awarded on the state law claims. 234 F.3d at 670. Thus even if Shum's victory is viewed as no better than nominal, the proper result is "no costs," not an award to the losing party. The Supreme Court in *Farrar* stated that when a victory is nominal "the only reasonable fee is usually no fee at all." 506 U.S. at 115.

As mentioned *ante*, the district court also taxed Mr. Shum for half of Intel's costs associated with the first trial, which this court reversed and remanded in Mr. Shum's favor. *Shum v. Intel Corp.*, 499 F.3d 1272 (Fed. Cir. 2007). A determination of who is the prevailing party should be made when the controversy is finally decided. *See* 10 *Federal Practice & Procedure* §2667 (3d ed. 2010). Yet the district court charged Mr. Shum with $77,200,

which were half of Intel's costs for the first trial, in which Shum succeeded on appeal.

In accordance with precedent, Mr. Shum is the prevailing party. At worst, the award should be "no costs." The district court exceeded its discretion in requiring Shum to pay Intel the difference between Shum's lower costs and Intel's higher costs, even on the district court's theory that it was "close" as to which side "prevailed." It is grievously unjust to tax Mr. Shum with the net costs of Intel's unsuccessful but more expensive defense. This approach cannot be reconciled with any theory of taxable costs. From my colleagues' endorsement of this ruling, I respectfully dissent.